Turn to our next case. Thank you. Thank you. Which is Paul Ferraro versus the New York City Education Department. Why don't you just give us a second until we get reorganized. Okay. Thank you, Your Honor. May it please the court. My name is Alan Wolin. I represent the appellant in this appeal. I believe the threshold issue with reference to the discrimination and retaliation claims is whether the court below properly applied the concept of collateral estoppel to those claims. The lower court held that the appellant's proceeding pursuant to 3028 of the education law barred the discrimination and retaliation claims. It is submitted that the lower court applied a too rigid application of the concept of collateral estoppel. Collateral estoppel should be a flexible concept and should take into consideration principles of fairness and equity. And it is submitted that in this particular case that was not the result. First of all, the hearing officer in the 3028 proceeding while did conceitedly consider the concepts of retaliation and discrimination did not apply a full analysis, a full McDonnell-Douglas analysis to those claims. It is also submitted that- Why would it be appropriate to do a McDonnell-Douglas analysis? That's kind of a summary judgment standard issue. The hearing officer heard all the evidence and then made a factual determination that there was no evidence, no evidence that the actions against plaintiffs were tainted by animus, hostility, or any inappropriate consideration. Well, but in making that determination, and you're correct with certain aspects of the plaintiff's claim, Your Honor, the hearing officer did render that conclusion. But I submit that there should have been a consideration of the respective burdens of proof in a discrimination or retaliation case. And I believe that the mere finding, albeit on a limited record, that there was no evidence of disability or disability discrimination or retaliation should not have been the basis for the court below in this case to apply the principle of collateral stop law. I'm following. Are you saying that there wasn't a full and fair opportunity to litigate the question? Right. How? Well, I don't- In what way? I believe that the plaintiff's attorney in that case presented the argument in passing. I don't think the argument was fully confronted by the appellant's attorney. I'm not sure I understand that. I'm looking at page 49 of the agency decision, which I think is D-1826. Right. It says that I considered Ferraro's claim that the formal and informal observations were rated unsatisfactory or inefficient in retaliation for the complaints that he filed with the department. I find the credible record does not support the claim of retaliation. So at least with retaliation, that seems to be that that was Mr. Ferraro's claim, that he got rated this way in retaliation for his complaints, and the hearing officer says that there's no credible record evidence. So how is that not a clear indication that it was litigated and decided adversely to your client? Well, I think that under the principles of collateral estoppel, Your Honor, I don't believe that that finding was material to a determination as to whether or not my client should be dismissed from his employment as a teacher. Wait, why not? If the charge is that he behaved incompetently and that therefore he should be fired, and the defense is this is a pretext that's been concocted because they were really being retaliatory. And the hearing officer then says, I don't find any evidence of that, but I do find evidence that the firing was justified. Why is it immaterial to make a finding on whether the defense is true that this was a concocted plot to get rid of Mr. Ferraro because of his disability? Well, first of all, I believe that this court has held that the mere fact that one is terminated in a 3028 proceeding doesn't in and of itself bar a subsequent discrimination action under the ADA or— That's not what Judge Lynch just asked you. It was raised and addressed in page 686 of the appendix. Furthermore, there is no evidence to show that Principal Onore or AP Slippen harbored any animosity or hostility against Ferraro because of the numerous complaints he filed that are related to his medical condition. The timing doesn't indicate any wrongdoing. They provided him with requested accommodations. There's specific discussion of all this in the 53-page— Right. Right? That is what the hearing officer ruled, but I don't believe that based upon the record that was developed in this case, the case before us, that those findings were true and accurate. That's the whole point of collateral estoppel. Once there's been a ruling made, you don't get to relitigate it. Right. But what kind of—there was no record, though, developed— There was no record developed because Mr. Ferraro and his counsel failed to develop one. They had the full opportunity. They could have called witnesses. They could have had additional testimony, additional cross-examination, additional documents, whatever they thought necessary in this hearing to establish the point, and they didn't do it. The 3028, you really don't have a major right to conduct discovery, which, of course, you had in this action. Any place where he requested discovery in that proceeding or sought to call witnesses and it was denied, you don't point to— Well, I don't believe statutorily on the 3028 you do have the right to conduct discovery. It's not discovery, but you can call witnesses. I mean, there's no question as to who the relevant witnesses were here. Well, his attorney, which was the union attorney, did not call any witnesses other than— He didn't request—  But I also think, Your Honors, that the issues in the action before us are much greater, much broader than the issues in the 3028. What did we learn in discovery that changes that outcome? We agree with you that there shouldn't be collateral estoppel because now we've had the opportunity for discovery. What smoking gun or not-so-smoking gun was found in the discovery that is beneficial to you? Well, Your Honor, I always charge that there's never a smoking gun in this case, so you always have to establish it, of course, by motivation and indirect evidence. But excuse me, though. The problem is when you say the issue is we didn't get to do discovery in the hearing, all those circumstances, if it's a question of the things that he already knew, that could have been done. Well, I think in this case there was evidence of remarks that were made by the principal and the assistant principal, which certainly can be construed to be— Well, I don't know whether he heard those remarks and testifies to them. He could have testified to that, or I don't know whether he did or didn't testify to those same remarks in the arbitration proceeding, but he could have. Well, yeah. I mean, he could have, but I don't believe he did. That doesn't have anything to do with discovery. I think that goes to my point, that where the record was not fully developed, the issue was not actually litigated, and that it would be unfair to apply collateral estoppel to bar the courses of action in this case. Well, you've got a couple minutes of rebuttal. Do you want to use them now or do you want to come back? I'll reserve my rebuttal. Okay. Thank you, Your Honor. We'll hear from the city then. Ms. Ravitch. Good morning, Your Honors. My name is Ellen Ravitch, and I'm here on behalf of the defendants. It's our position that collateral estoppel does bar all of the claims here for the reasons, really, that Your Honors were pointing out. It's clear from both the transcript from the 3020A hearing and the very lengthy decision that all of the issues of discrimination and retaliation that are presented in this lawsuit were also presented there, considered, and determined. The hearing officer did state that there was no animus as motivation and that there was no wrongful animus, and in addition, the hearing officer found that there were legitimate reasons related to the deficiencies in Mr. Ferraro's teaching that supported the decision and that led to the decision. We disagree with the district court that the hostile work environment claim is not collaterally stopped because all of the issues that the plaintiff seems to raise on the hostile work environment claim were also litigated in the 3020A hearing, and again, the hearing officer said that there was no wrongful animus in the decisions. It's really unclear, actually, what the plaintiff is claiming constituted the hostile work environment claim, as we note in our brief. In their brief, there are no facts discussed at all. There's two and a half pages of law and a few-line paragraph just saying, look at the record, and basically, you'll find that there was hostile work environment. But even assuming that it is all of the actions that he complained about regarding discrimination and retaliation that he now is saying constituted the hostile work environment, those were all addressed by the hearing officer who, again, found that there was no wrongful animus and that all of these actions were taken to address the deficiencies in the teaching, which were discussed at length in that hearing. But the district court did say there's no support in the record for the hostile work environment. Right. Yeah. The district court said that the hostile work environment claims were not addressed in the determination. But it also found it inadequate, so you would succeed if we affirm on that ground, right? I'm sorry. Also found what? Inadequate. Sorry. As Judge Roney said, that there was no support in the record for it, for the hostile work environment claim. I think it's page 40 if you need to look at it. Thank you. I mean, I think she first went on to say that he hasn't pointed to anything in the record. He just kind of threw the record at us. He could not show that it was motivated by disability. Right. So. It's on page 40. Yeah, I see it. Right. But I'm not sure that the district court felt that, yes, that it wasn't . . . Sorry. That the facts did not support the hostile work environment claim. But I was just talking about whether collateral estoppel should apply, which the district . . . My question is . . . Sorry. You don't want to win on the ground the district court entered summary judgment on? You want to win only on collateral estoppel? No, not only on collateral estoppel. That was just our first point. But I thought that since we did take a different position than what the district court decided on that one point, I would mention it since we were talking about collateral estoppel. But moving on to the merits, even if this court feels that collateral estoppel does not apply to some or all of the claims, really for the big reason that the defendants stated legitimate non-discriminatory and non-retaliatory reasons for their actions . . . We have read your brief on that point. Yes. And it wasn't orally argued. True. If you're happy to rely on my brief and you don't . . . I'm happy to listen to whatever you want to say. I'm just mentioning that Mr. Wolin did not argue or did not get to the points on the merits. Sure. So, unless there's something you want to say to supplement your brief on this, the argument's already been presented on both sides. Okay. Sure. That's fine. The only thing I would like to add, and this is related to something that was addressed on the appellant's argument, was that he made reference to the fact that there were remarks. And Your Honors pointed out that, of course, he could have testified to the remarks because he would have heard the remarks. But even aside from the collateral estoppel point, the only remarks that are even discussed anywhere in this record having to do with his disability were one time in 2007 where the principal asked . . . who was then the . . . he was the principal then . . . who asked him how he was feeling, which gave no inference at all that it was discriminatory or that he was acting against him in some reason because of it. And the one by Mr. Slippen, whom he had told himself years earlier of his disability, he made a comment to him that despite his medical condition, he had excellent attendance. So, again, even if you look at the remarks that are in the record, there's no inference of discrimination there. And the same is true about the retaliation. All the plaintiff cites about retaliation is that both Slippen and Honore admit that they were unhappy about being sued. But, again, we would say that that is not an indication at all that there was any kind of retaliatory inference to be drawn. And with that, I'll rest on my brief. Thank you. Thank you. Mr. Wallin, you've got a couple minutes for a photo. Thank you. As we know, the lower court did not find the hospital work environment claim to be collaterally estopped. And I submit that on the record, there's a detailed 56.1 here of approximately 40 pages, which certainly, contrary to the lower court's decision, indicate that my client was subject to a pervasive and continuous pattern of activity, which did affect the terms and conditions of his employment. And I submit that for purposes of the summary judgment motion, there are questions of fact as to whether or not that's sufficient. The pervasive activity is mostly all of the issues about was he performing well in the classroom. So the question that would naturally arise is the same one that arises when you look at those incidents individually or when you look at them collectively as to whether there was a discriminatory motive for all of this occurring, or was it a legitimate inquiry into his performance. And that is the question that was asked at the hearing. And the hearing officer concluded there was not. That is the question that the district court addressed in saying there's no evidence of a hostile environment. It's not that all these things didn't happen in terms of investigations and reviews and criticism. It's a question of what was it based on. And I submit that there is sufficient evidence of animus here. Can you give me like the two best things? Because you only have a little bit of time left. What are the two best indicators that this was animus? Your Honor, my adversary, in my opinion, misconstrued the nature of the remarks. The 56.1 at page 1443 indicates that the principal directly referred to my client's health saying that he chooses. He could refer him to a Department of Education doctor to determine if he was healthy enough to work. And after my client objected to that statement, the principal said if that's the way you want it, get out and wait in the hall. So I believe that's certainly a more harsh statement than counsel attributed to him. And then during the meeting, he also in a very threatening tone spoke very negatively about the plaintiff's health with reference to his ability to perform his job duties. Then at another time, he told plaintiff that because of his health, he would consider giving plaintiff an assignment as an extra health math teacher, where he would not have to issue report cards or complete assessment binders. Another time, the assistant. That sounds like an accommodation rather than. Well, I don't know. My client certainly didn't look at it that way. Another time, the assistant principal said that plaintiff must be the sickest person in the school, disregarding the fact that the plaintiff had an exemplary attendance record. And then look, this is a situation here where my client had a severe case of MS. And there did come a time concededly where the MS was affecting his ability to perform his job. His organization skills, his ability to complete things in a timely manner, his ability to ambulate. He was having difficulty even standing in the classroom. He could not walk through the hallway without difficulty. And the claim here is just that he wasn't accommodated. The heat and the humidity in the classrooms had a very negative effect on his performance ratings. He asked for air conditioners. A lot of the times, the air conditioners were not working. But the accommodations are, there's a disability coordinator who responded to his request. Mr. Bruton said he's provided with an air conditioned classroom. He's allowed to use the manual four wheels, four legs, rolling rocker in the school. And he can use the ramp to get in and out. He's been provided with a teaching stool with wheels so he can get around the classroom. He's relieved of his escort duty for students. So there were accommodations made, right? Those were the accommodations in theory. But in practice, the- Did he get that stuff? Excuse me, Your Honor? Did he get that stuff? Not a lot of it. He didn't get regular working air conditioning. He claims he never got the portable air conditioner, you know, the window type of air conditioner. And he didn't get a phone. That was the only other thing he didn't get, right? He claims that the stool that he did get was not adequate for his needs. He claims that he was given an assignment on the third floor, which gave him difficulty. And then he was exempted from that. Excuse me? Then he was exempted from that third floor assignment. Right. But rather than being accommodated by being able to perform the assignment on the first floor, the assignment was just taken away from him altogether. So how was that an accommodation if it was just taken away from him altogether? They used it for teacher preparation time instead, right? The 45 minutes. They said, why don't you just use it for, instead of doing those duties, just use the time to prepare. Which was one of the deficiencies. Right. But he thought that wasn't an accommodation. The bottom line here is that he had serious disabilities here. He was always a successful teacher. And as the disabilities got worse, the defendants preyed on the disability and took advantage of the disability because he was so vulnerable. And he went from being an effective teacher for 20 years to being an ineffective teacher. And why does that happen? The theory is that happened because of his disability, the failure to accommodate it, and that the individual defendants just kept preying and preying on the disability, taking advantage of the disability until the time he was terminated. Thank you, Your Honors. Thank you, Mr. Wallen. We'll reserve a decision on this appeal, and we'll turn to the hearing.